WATERS, Respondent, vs. MARKHAM, Administrator, Appellant.

*March 10—April 7, 1931.*

334

For the appellant there were briefs by *Masters & Hansen* of Sparta, attorneys, and *Fisher, Cashin & Reinholdt* of Stevens Point of counsel, and oral argument by *W. E. Fisher*.

For the respondent there was a brief by *Donovan & Gleiss* of Tomah, attorneys, and *Grady, Farnsworth & Walker* of Portage of counsel, and oral argument by *Walter H. Farnsworth* and *W. M. Gleiss*.

NELSON, J. It is undisputed that the plaintiff, at the time of the accident, was a guest of the Reverend Bruggink, the deceased. The legal relation existing between them was that of licensor and licensee and their respective rights and

liabilities were those incidental to such a relation as established by law. *Greenfield v. Miller*, 173 Wis. 184, 180 N. W. 834; *O'Shea v. Lavoy*, 175 Wis. 456, 185 N. W. 525; *Cleary v. Eckart*, 191 Wis. 114, 210 N. W. 267; *Thomas v. Steppert*, 200 Wis. 388, 228 N. W. 513. It is clearly the law of this state that an automobile host owes to his guest the duty of exercising ordinary care not to increase the danger to the guest which the latter assumes on entering the car, or to create a new danger. *Cleary v. Eckart, supra; Poneitowcki v. Harres*, 200 Wis. 504, 228 N. W. 126; *Sommerfield v. Flury*, 198 Wis. 163, 223 N. W. 408; *Grandhagen v. Grandhagen*, 199 Wis. 315, 225 N. W. 935.

"His duty extends only to refraining from increasing the danger which the guest assumes upon entering the automobile manned by the driver provided or from adding a new danger." *Cleary v. Eckart, supra,* p. 120. The danger which the host is under obligation not to increase, is obviously the danger which may be anticipated and which is assumed by the guest upon entering the car. *Sommerfield v. Flury, supra; Grandhagen v. Grandhagen, supra.* On entering an automobile and accepting the hospitality offered, a guest accepts the automobile in the condition in which it exists and as then maintained by its owner. *Cleary v. Eckart, supra.*

The foregoing rules of law applicable to the relation of licensor and licensee are, however, subject to the proviso that the host does not fail in the duty of warning his guest as to any latent or concealed defect, in the nature of a trap, which is known to him but unknown to the guest, and which the host believes to be dangerous and which he realizes involves an unreasonable risk to his guest. *O'Shea v. Lavoy, supra.*

This court has often had before it cases involving the duty of a host to exercise ordinary care not to increase the

danger to his guest or to create a new danger, but it has not had occasion to pass upon the specific question involved in this appeal.

In *O'Shea v. Lavoy, supra,* the plaintiff therein sought to hold the defendant liable for damages resulting from a broken spring which had been repaired and which the owner had no reason to believe was unsafe. The court, upon the evidence in that case, held that the owner did not fail in the performance of any duty which he owed to his invited guests.

The precise question involved in this appeal as respects the defective tires has not been passed upon by this court. We have therefore given very careful consideration to this question to the end that a just rule of law may be declared. In *Cleary v. Eckart, supra,* p. 119, the following quotation from *Patnode v. Foote,* 153 App. Div. 494, 138 N. Y. Supp. 221, is found: "One who invites another to ride is not bound to furnish a sound vehicle or a safe horse. If he should have knowledge that the vehicle was unfit for transportation or the horse unsafe to drive, another element would arise, and he might be liable for recklessly inducing another to enter upon danger." This rule, however, does not seem wholly satisfactory because the duty of a host is not thereby clearly defined.

In a carefully considered decision recently rendered by the New York court of appeals, *Higgins v. Mason,* 255 N. Y. 104, 174 N. E. 77, that eminent court, in discussing the grounds on which the liability of the defendant therein for a defect in his automobile could be predicated, said: "Mason would be liable only if he knew of the dangerous condition; realized that it involved an unreasonable risk; believed that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved."

It is our conclusion that an automobile host may be held liable for injuries to his guest, caused by a defective condition of his automobile, if he knew of such defect and realized, or should have realized, that it involved an unreasonable risk to his guest, and the defect was so concealed or hidden as not to be reasonably obvious or patent to the guest, and the defect and the risk involved were in fact unknown to the guest, and the host failed to warn the guest as to the defective condition and the risk involved therein.

This rule seems to be eminently fair and just and fully to state the grounds upon which the liability of a host for injuries to his guest resulting from a defective condition of an automobile may properly be predicated. See Restatement of the Law of Torts, Tentative Draft No. 4, The American Law Institute, secs. 201, 210, 212, wherein the liability of the possessors of land to gratuitous licensees is discussed. The following synopsis is found on page 163 of the Draft:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

    (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

    (b) invites or permits them to enter or remain upon the land, without exercising reasonable care

        (i) to make the condition reasonably safe, or

        (ii) to warn them of the condition and the risk involved therein."

Consideration of the verdict as submitted to the jury compels the conclusion that the real and important issues in this action were not submitted to or passed upon by the jury. The special verdict submitted simply required the jury to find whether the Reverend Bruggink exercised or-

dinary care in respect to speed, in respect to operating the car with the tires in the condition they were in, and in respect to control and management of his car.

Clearly the question as to speed, control, and management should have been so framed as to enable the jury to determine whether the deceased failed to exercise ordinary care which increased the danger or added a new one to those which she assumed upon entering the car. *Poneitowcki v. Harres,* 200 Wis. 504, 228 N. W. 126; *Sommerfield v. Flury, supra,* and *Grandhagen v. Grandhagen, supra.*

The real question as to the tires was one relating to the condition of the car. The tires were a part of the car and entered into its condition as much as did the spring in *O'Shea v. Lavoy, supra,* or the accelerator in *Hennig v. Booth,* 4 N. J. Misc. Rep. 150, 132 Atl. 294. As clearly appears from the record herein, liability was sought to be predicated upon the old and defective tires. The issues raised on such claim were, whether the deceased knew that his tires were in a defective condition and realized, or should have realized, that the tires in the condition they were in involved an unreasonable risk to the plaintiff; whether the defective condition of the tires was so concealed or hidden as not to be reasonably obvious or patent to the plaintiff; whether the defective condition of the tires and the risk involved therein were unknown to the plaintiff; and whether the deceased failed to warn the plaintiff as to the defective condition of the tires and the risk involved therein.

In the view we take of this case the real issues were not submitted to the jury. Liability of the defendant estate cannot be spelled out of the verdict as rendered.

If the proven facts clearly justified an inference of excessive speed, and if it clearly appeared that such failure to exercise ordinary care was the proximate cause of plaintiff's injuries, and if it further clearly appeared that the plaintiff did not assume this risk, then we might hold that the form of the verdict submitted was not prejudicial. *Ponei-*

*towcki v. Harres, supra,* pp. 510, 511. However, in this case there is no certain evidence of excessive speed unless such can be inferred from the physical facts appearing after the accident. These were the flat tire which evidently blew out while the car was traveling in the center of the road; the tracks leading to the right at an angle of about twenty-five degrees; the broad deep tracks along the right side of the road through the grass-covered sand for a distance of about ninety-six feet; the abrupt turning of the car to the left at an angle of forty-five degrees, back to the center of the road, and the overturning once or twice of the car. All of these physical facts are quite persuasive of the inference that the car left the graveled center of the highway, traveled easterly along the side of the road, and then was turned back upon the highway where it overturned, because of the blow-out of the tire and not because of any excessive speed. All of the antics of the car may be explained by the blowout occurring while the car was being driven at a reasonable rate of speed as well as while the car was being driven at an excessive rate of speed. If it were not for the blowout, the broken springs, the loosened steering gear, the physical evidence of the course and antics of the car might furnish an inference of excessive speed.

The same comment applies to the claimed failure of the deceased to exercise ordinary care as respects the control and management of his car. The physical facts do not show with any certainty that the Reverend Bruggink did anything which, in the exercise of ordinary care, he should not have done, or failed to do anything which he should have done in controlling or managing his car after the blowout occurred.

No question was submitted to the jury inquiring as to whether the plaintiff assumed the risk of the particular speed or the particular control of the car at the time of the accident. As the record stands there is no competent evidence even tending to show that the plaintiff did not assume the risk of the speed and control of the car at the time of the

accident, dissociated, of course, from the defective tires. Were there no jury issue in this action as to the condition of the tires, knowledge of the deceased as to their condition, etc., we would have little hesitation in holding as a matter of law, upon the record herein, that the plaintiff assumed the risk both as to the speed and control of the car and that the complaint should be dismissed. *Olson v. Hermansen,* 196 Wis. 614, 220 N. W. 203; *Brockhaus v. Neuman,* 201 Wis. 57, 228 N. W. 477; *Thomas v. Steppert,* 200 Wis. 388, 228 N. W. 513; *Cleary v. Eckart, supra; Page v. Page,* 199 Wis. 641, 227 N. W. 233. But, because the real issues were not properly submitted to the jury under the rules hereinbefore declared, the action must be reversed for a new trial.

This disposition of the action makes it unnecessary to consider more than a very few of the many errors assigned by the defendant.

The instructions of the court related strictly to the verdict as submitted and in no manner explained the duties and obligations which a host owes to his guest or as to the risks which a guest assumes on entering a car. It is, however, not deemed necessary to say anything in particular as to the instructions given, with one or two exceptions, as upon a retrial of the real issues involved in this action the court should have no difficulty in formulating proper instructions.

The court submitted but a single question relating to proximate cause and a single question relating to reasonable anticipation. Having submitted to the jury the first question, which contained three separate subdivisions respecting deceased's failure to exercise ordinary care, it was improper for the court to so submit proximate cause and reasonable anticipation. The question relating to proximate cause should have had three subdivisions, and the same is true as to the question submitting reasonable anticipation. *Berrafato v. Exner.* 194 Wis. 149, 216 N. W. 165.

The court instructed the jury as to a five-sixths verdict as follows: "I will also instruct you that if five-sixths of the jury, that is, all but two of you, agree upon the answer of any question, that is the verdict of the jury. The law is such that five-sixths of the jury in a civil action may make the verdict." This was all of its instruction to the jury on that subject. The instruction was, of course, erroneous (*Will v. C., M. & St. P. R. Co.* 191 Wis. 247, 210 N. W. 717; *Dick v. Heisler,* 184 Wis. 77, 198 N. W. 734; *Larson v. Koller,* 198 Wis. 160, 223 N. W. 426; *Christensen v. Schwartz,* 198 Wis. 222, 222 N. W. 231, 223 N. W. 839), though probably not prejudicial in view of the fact that the jury answered the several questions unanimously. *Ireland v. Tomahawk Light, T. & I. Co.* 185 Wis. 148, 200 N. W. 642; *Bentson v. Brown,* 186 Wis. 629, 203 N. W. 380.

Error is further assigned because the plaintiff was permitted to testify, over the defendant's objection, as follows: "Whenever I thought he was driving too fast or speeding I objected, of course." This was objected to as being a transaction or communication by her personally with a deceased person and therefore violative of the prohibitions of sec. 325.16 of the Statutes. The statement as made clearly did not relate to the particular trip on which the accident occurred, but rather to her claimed custom or habit of objecting at other times when she thought deceased was going too fast. The question raised seems not to have been directly passed upon by this court or any other court with one exception. In *McCarthy v. Woolston,* 210 App. Div. 152, 205 N. Y. Supp. 507, it was said, somewhat *obiter:* "If McCarthy [the deceased], sitting on the rear seat, had said anything to the witness [the defendant driver] in the matter of giving warning or directions as to the operation of the car, he would have been prohibited from testifying on that subject." It seems rather clear that the plaintiff

herein would be incompetent to testify in this action as to a protest made to the deceased just prior to the accident. Such testimony might be most important in proving liability in a case like this and would undoubtedly amount to a transaction or communication with a deceased person. If the testimony was offered and received for the purpose of permitting the jury to infer that a protest on this particular trip might have been made by the plaintiff, which she could not recall due to her injuries and resulting lapse of memory, or for the purpose of showing that the plaintiff constantly voiced her objections to the deceased's fast driving, we think it was incompetent, objectionable, and prejudicial.

If it was offered only for the purpose of proving that the plaintiff had on other occasions voiced her protest against the fast driving of the deceased, we think it was objectionable because immaterial.

*By the Court.*—Judgment reversed.