**Jerome CROSS, Appellant (Plaintiff below),**

v.

**Edward K. FOSTER, Appellee (Defendant below).**

**No. 3106.**

Supreme Court of Wyoming.

Feb. 26, 1963.

Joseph F. Maier, Torrington, for appellant.

A. Joseph Williams, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, McINTYRE and GRAY, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

As a passenger in an automobile driven by defendant-appellee, the plaintiff-appellant sought damages for injuries received when the automobile was involved in an accident.

Following the trial and the jury's return of a directed verdict, judgment in favor of defendant was entered and plaintiff appeals posing three questions: (1) Was plaintiff a guest or a passenger for hire? (2) If plaintiff was a guest passenger, was defendant guilty of gross negligence? and (3) Did plaintiff assume the risk involved?

A summary of plaintiff's testimony is that at about 3:30 a. m., of the day of the accident, plaintiff and defendant left Cheyenne in defendant's automobile intending to return to a bridge construction site several miles west of Rawlins where both plaintiff and defendant were employed. Defendant told the plaintiff he was tired so plaintiff drove the automobile while defendant slept beside plaintiff in the front seat. By the time the parties reached Medicine Bow, Wyoming, plaintiff was sleepy and defendant then took over the driving and continued to drive until there was an accident which occurred some 50 miles west of Rawlins, Wyoming. After defendant commenced driving at Medicine Bow, plaintiff "stayed awake and noticed he was driving

okay," then plaintiff went to sleep. Before leaving Rawlins they stopped for "gas" for which the plaintiff paid. After leaving Rawlins plaintiff dozed in his seat but he observed defendant "seemed to be driving fine from Rawlins to the point—it appeared to me," and plaintiff "didn't feel to [sic] secure in the car, never have, and more or less kind of woke up and I noticed that Ed was driving the car, it was warm from the heater and he had a pillow—at this time I noticed in the back of his head and was resting against it." Plaintiff asked defendant to take the pillow away (the record does not show what, if any, response defendant made to this request of plaintiff). Plaintiff remembered:

" * * * waking up, you know, and Ed was driving and he was awful tired and I suggested to him that I might drive; I remember that, and that we should either just pull over and sleep or, you know, pull off the highway because Ed was getting so darn tired, he had a pillow in back of his head one time and he was driving, I mean, driving with the pillow in back of his head at the same time. But that was no fault of anyone, he was just so tired, he was just putting it back of his head there to relax. Then that scared me when he did that, so I suggested that we went [sic] ahead and that I either drive—or no—yet I was so drowsy that I wanted to sleep too, so I just kept laying [sic] in the seat and thought maybe about an accident, you know, as soon as I saw that pillow that kinda [sic] scared me because I knew Ed was getting sleepy. Then,—well, I knew it was a few more miles and I was drowsy; so it wasn't long and I heard a bang and looked up and this time I looked up while there was a post going over the top of the car, on [sic] of these road posts and I looked over and Ed was asleep * * *."

In a statement made twelve days after the accident plaintiff said, "I know that I did say, 'Ed, if you're tired[']—I said, 'Ed, do you want me to drive.[sic]' I'm positive I said that, 'Ed, are you too tired and want me to drive?' I said, 'Ed, if you're too tired I'll drive,' that's what I said, 'Ed if your're [sic] too tired I'll drive.'" When plaintiff was asked, "were you insistent on wanting to go ahead and drive yourself, or was it just a suggestion that you made?" the plaintiff answered:

"Well, I was, you know how a person is when you are drowsy; I was drowsy and everything, I wanted to sleep mainly. Ed and I wanted to get there and go to sleep, I wanted to—I couldn't have driven, I suppose. I wish I would have driven though, because I would have been awake enough that I could have did [sic] it, see. But at that time I was so drowsy that I wasn't insistent enough to make him, you know, pull over. See, if I would have been, I wouldn't be laying [sic] here right now I wouldn't imagine. And Ed was so tired that he thought everything was okay too. He wanted to get out and—there and sleep too, which is nothing against Ed."

The above summary of plaintiff's statements and testimony clearly indicates that plaintiff was fully aware of defendant's condition and unfitness to drive the automobile, and, although plaintiff suggested and offered to drive, he made no protest and in his own words did not insist that defendant let him drive. The plaintiff's testimony and the statement he made twelve days after the accident present no grave inconsistencies. Both reveal plaintiff's inability to state with unvarying clarity every detail of what was said and what took place, yet a reasonable evaluation of all that plaintiff recalled shows he voluntarily assumed the risk and hazard of riding in the automobile with full knowledge and appreciation of the danger of so doing. See 61 C.J.S. Motor Vehicles § 489c, p. 111; 38 Am.Jur., Negligence, § 171, p. 845; 5A Am.Jur., Automobiles and Highway Traffic, § 787, p. 735; Storlie v. Hartford Accident & Indemnity Co., 251 Wis. 340,

28 N.W.2d 920, 922–923; Cosby v. Younger, Ky., 311 S.W.2d 389, 390; Mountain v. Wheatley, 106 Cal.App.2d 333, 234 P.2d 1031; Markovich v. Schlafke, 230 Wis. 639, 284 N.W. 516, 517; Maybee v. Maybee, 79 Utah 585, 11 P.2d 973; 4 (Part 1) Blashfield's Cyclopedia of Automobile Law and Practice, §§ 2511, 2512, 2513, pp. 706–720 (Perm.Ed.). Under these circumstances it becomes unnecessary to determine whether plaintiff was a guest passenger of defendant or a passenger for hire.

The judgment of the trial court is affirmed.

Affirmed.